NOT FOR PUBLICATION IN WEST'S HAWAIʻI REPORTS AND PACIFIC REPORTER

Electronically Filed
Intermediate Court of Appeals
CAAP-16-0000822
17-SEP-2019
07:51 AM

NO. CAAP-16-0000822

IN THE INTERMEDIATE COURT OF APPEALS

OF THE STATE OF HAWAIʻI

STATE OF HAWAIʻI, Plaintiff-Appellee,
v.
JOSEPH URBANSKI, Defendant-Appellant

APPEAL FROM THE CIRCUIT COURT OF THE FIRST CIRCUIT
(CR. NO. 15-1-1181)

MEMORANDUM OPINION
(By:  Fujise, Presiding Judge, Leonard and Hiraoka, JJ.)

Defendant-Appellant Joseph Urbanski (**Urbanski**) appeals from the Findings of Fact, Conclusions of Law and Order Denying Defendant's Motion to Withdraw Guilty Plea (**Order**) entered by the Circuit Court of the First Circuit[1] (**Circuit Court**) on October 20, 2016.  Urbanski contends that the Circuit Court erred in concluding:

> 1. The Court finds that there is no manifest injustice occurred [sic] that would warrant a withdrawal of the plea, based on an affirmative showing through on-the-record colloquy between the Court and the defendant which shows that defendant had a full understanding of what his or her plea connoted and its direct consequences.

(Citations omitted.)

For the reasons explained below, we vacate the Order and remand for proceedings under Rule 40 of the Hawaiʻi Rules of Penal Procedure (**HRPP**) (2006).

---

[1]    The Honorable Dean E. Ochiai presided over all of the proceedings at issue in this appeal.

**I.**

On July 27, 2015, Urbanski was charged by felony information with second degree burglary in violation of Hawaii Revised Statutes (**HRS**) § 708-811 (2014).[2] He was represented by the Office of the Public Defender (**OPD**). On September 21, 2015, he changed his plea to guilty and moved to defer acceptance of his plea. During the change of plea hearing the Circuit Court engaged Urbanski in this lengthy colloquy (which formed the basis for the Circuit Court's subsequent denial of Urbanski's post-sentencing motion to withdraw his guilty plea):

Q    Is your mind clear today?

A    Absolutely.

Q    Do you understand what is going on today?

A    Yes.

Q    Okay. Have you taken any medication, alcohol, or any illegal drugs during the last 48 hours?

A    No.

Q    Are you sick?

A    No.

Q    Can you speak, read, write, and understand the English language?

A    Yes, sir.

Q    I have before me a guilty plea and motion to defer form.

     Did you have the opportunity to thoroughly go through this form?

A    Yes, sir, I have.

Q    And do you understand all of the terms that are contained within this form?

A    I think so.

---

[2]    HRS § 708-811 provides, in relevant part:

    (1) A person commits the offense of burglary in the second degree if the person intentionally enters or remains unlawfully in a building with intent to commit therein a crime against a person or against property rights.

Q      Okay.  You had a chance to talk to your attorney before signing this form?

A      Yes, sir.

Q      All right.  Now, did you receive a written copy of the original charge against you in this case?

A      I don't remember that, sir.

Q      The paper that accuses you of burglary in the second degree, either the complaint, the information, or the indictment?

A      Yes, sir.

Q      Okay.  Has that charge been explained to you?

A      Yes.

Q      Do you understand what that charge is against you?

A      Burglary in the second.

Q      Okay.  Have you told your lawyer all of the facts that you know about your case?

A      Yes, sir, I have.

Q      Has your lawyer explained to you what evidence the Government has against you, your possible defenses, and the facts that the Government must prove in order to convict you?

A      Yes, sir.

.  .  .  .

Q      Mr. Urbanski, are you pleading guilty of your own free will?

A      Yes, sir.

Q      Is anyone pressuring you, threatening you?  Is any other person forcing you to plead guilty?

A      No, sir.

Q      Are you taking the blame for someone else or pleading guilty to protect some other person from prosecution?

A      No, sir.

Q      You understand that you do have the right to plead not guilty and have a speedy and public trial either by way of jury or by the Court?

A      Yes, sir.

Q      At trial, the Government is required to prove your guilt beyond a reasonable doubt.

       Do you understand this?

A      Yes, sir.

Q    At trial, you can see, hear, and question witnesses who would testify against you, and you can call witnesses to testify for you.

Do you understand this?

A    Yes, sir.

Q    At trial, you also have the right to take the stand and testify on your own behalf, or you could choose not to testify.

Do you understand this?

A    Yes, sir.

Q    Do you understand that by pleading guilty, you are giving up your right to file any pretrial motions, you are giving up your right to a trial, and you may be found guilty and sentenced without a trial of any kind?

Do you understand this?

A    Yes.

Q    You also give up the right to appeal anything that has happened in your case up to this point.

Do you understand?

A    Yes, sir.

Q    Do you understand that the Court can impose any of the following penalties for the offense to which you are now pleading guilty: The maximum term of imprisonment is up to 5 years, the maximum fine is up to $10,000?

Do you understand?

A    Yes, sir.

Q    In addition, the Court can also order restitution, fees, assessments, community service, and probation with up to one year of imprisonment and other terms and conditions.

Do you understand this?

A    Yes, sir.

Q    Are you pleading guilty because after discussing all of the evidence and receiving advice on the law from your lawyer, you believe that you are guilty?

A    Yes, sir.

Q    Okay.  Is it correct that on July 25, 2015, on the island of Oahu [O‘ahu] -- and the Court will take judicial notice Oahu [O‘ahu] is in the state of Hawaii [Hawai‘i] -- you did intentionally enter unlawfully into a building with intent to commit therein a crime against property rights?

Is that correct?

A    Yes, sir.

. . . .

Q    You are moving to defer the acceptance of your guilty plea; is that correct?

A    One more time.  I'm sorry.

Q    You're moving to defer the acceptance of your guilty plea, in other words, you're asking for an opportunity that if you abide by -- if the Court does approve of your deferred acceptance, if you abide by the terms and conditions imposed upon you, that after a period of time, this case will be dismissed with prejudice.

Do you understand this?

A    Yes, sir.

Q    Okay.  You also understand that if the Court rejects or denies your motion for deferral, the Court will then find and adjudicate you guilty upon your plea and impose an appropriate sentence?

Do you understand this?

A    Yes, sir.

Q    There has been no plea agreements reached between you and the prosecution; is that correct?

A    Absolutely.

Q    Okay.  So you're pleading guilty of your own free will as charged; correct?

A    Yes, sir.

Q    The Court will advise you I have had conferences with both your attorney and the prosecutor regarding your case. One of the things we talked about was what would be a fair and appropriate sentence if you decided to change your plea, and I gave my inclinations, meaning my thoughts, out loud to your attorney and the prosecutor.  Those inclinations I'm sure have been shared to you by your attorney.  Understand that they are not promises because much depends -- in fact, all of it hinges on what comes out in your presentence investigation and report.

Do you understand?

A    Yes, sir.

Q    Okay.  If everything comes out the way it's been represented to me, I have no problems following through with the Court's inclinations.  All right?

Do you understand this?

A    Yes, sir.

Q    Okay.  Although history is not going to be an indicator of what I do in the future, I can tell you this much, that [defense counsel] is currently batting 1,000 percent with the Court, all right, just to let you know, because he's always laid things out straight before the

Court, and there has not been any surprises from any of his clients.

You understand this?

A     Yes, sir, I do.

Q     But you understand no promises are made?  It's up to you from this point on.

Do you understand?

A     Yes.

Q     The Court also needs to advise you of the following, that if you are not a citizen of the United States, whether or not you have lawful immigration status, you have the right to receive advice from your attorney about the specific impact that this case will have, if any, on your immigration status.

Do you understand?

A     Yes, sir.

Q     Okay.  The entry of a guilty or nolo contendere plea, admission of guilt, or sufficient facts, or conviction, deferred judgment, or deferred sentence may have the consequences of immediate detention, deportation, exclusion from admission to the United States, or denial of naturalization pursuant to the laws of the United States.

You understand?

A     Yes, sir.

Q     In some cases detention and deportation from the United States will be required.

Do you understand?

A     Yes, sir.

Q     Your lawyer must investigate and advise you about these issues prior to the commencement of trial, entry of a guilty or no contest plea, or admission of guilt or sufficient facts to any offense punishable as a crime under state law other than those offenses designated as infractions.

Do you understand?

A     Yes, sir.

Q     And you're not required to disclose your immigration or citizenship status to the Court.

So have you been advised about these issues with regard to if you are not a United States citizen?

A     It was talked about, but I also mentioned it to him that I am a citizen.

Q     All right.

A    It was something I didn't need to concern myself with.

. . . .

Q    Okay.  Now, Mr. Urbanski, have you signed this guilty plea form after going through all of it with your lawyer?

A    Yes, sir.

Q    <u>You understand that you will not be allowed to withdraw your guilty plea if you are not satisfied with the sentence you receive</u>?

A    <u>Yes, sir</u>.

Q    Have you signed this form in the presence of your lawyer?

A    Yes.

Q    Do you have any complaints about the work or advice that your lawyer has provided you?

A    No.

Q    Are you satisfied with the work and advice that he has done for you?

A    Yes.

Q    The Court, too, is satisfied that you have been represented by competent counsel, and that you're about to freely and voluntarily enter a change of plea in this case.

As to the charge of burglary in the second degree in violation of HRS 708-811, what is your plea?

A    Guilty.

(Underscoring added.)

The sentencing hearing took place on November 25, 2015. Urbanski's deputy public defender explained:

I've been dealing with Joseph [Urbanski] for the past four months.  This is what happened.  He went to the Kinoshitas' house and he entered their storage shed, took the bottle of water and was drinking it.  Joseph lives nearby.  He lives on Emers -- or lived, I should say, on Emerson Street; I think the Kinoshitas live on Prospect.  So he lived within walking distance, so this was where Joseph lived.  This was his neighborhood.  And what had happened was he was not in the right state of mind.

. . . .

But <u>we understand when you look at the letter of the law for Burglary in the Second Degree</u>, I mean, <u>that's what we have here is a burglary</u>, but it was never Joseph's intent to purposely go there and harm anybody.  It was never his intent to purposely go to Mr. Kinoshita's house and take something or steal from them.  He was just not in the right

state of mind and he'll address the court on that.  But he gets that.

(Underscoring added.)  Urbanski was asked if he wanted to say anything, and he replied:

> THE DEFENDANT: If you have any questions, sir?
>
> THE COURT: I do have one.
>
> THE DEFENDANT: Please.
>
> THE COURT: Where is that Smith & Wesson that you did not report to your probation officer?
>
> THE DEFENDANT: I told the truth to the probation officer.  Once I have access to telephones, I would call the three people who I -- I know I gave it to a policeman, sir, when I was leaving country and I don't know which policeman I gave it to. . . .
>
> [DEFENSE COUNSEL]:  Judge, we know where -- we know we can get it. It's with the police officer.
>
> . . . .
>
> THE COURT: Okay. Anything else?
>
> THE DEFENDANT: No, sir.

The Circuit Court deferred acceptance of Urbanski's guilty plea subject to special conditions which included a one-year prison term "subject to early release to a dual-diagnosis residential treatment facility, and remain there until clinically discharged, with the approval of your probation officer[.]"

On January 4, 2016, OPD moved to withdraw as Urbanski's counsel.  On January 6, 2016, the Circuit Court appointed private counsel for Urbanski.  On March 14, 2016, Urbanski's private counsel filed a motion to withdraw Urbanski's guilty plea.  The motion was heard on April 25, 2016.  On October 20, 2016, the Circuit Court entered the Order at issue in this appeal.  The Order contains the following findings of fact:

> 1.    The Court finds that on September 21, 2015 Defendant changed his plea to "guilty" voluntarily, knowingly and intelligently with the full understanding of the plea and consequences thereof.
>
> 2.    Based on the extensive colloquy of Defendant at the time of the change of plea when this court was able to speak to Defendant, hear his answers, observe his demeanor, as well as physical and mental state and evaluate the appropriateness of his responses, this

Court finds that Defendant was responding appropriately to Court's questions, that he fully understood the proceedings, was engaged in an intelligent and meaningful colloquy with this Court at the time of the change of plea and did not exhibit any signs of any confusion or mental deficiency or hesitation.

3. The Court finds that [the] Deputy Public Defender . . . who represented Defendant at the time of the change of plea acted competently at all times in the best interest of his client, as evidenced by persuading this Court to grant a deferral of Defendant's guilty plea at sentencing on November 25, 2015, thus allowing Defendant to have the criminal case dismissed if he complied with all the conditions of the deferral.

4. The Court further finds that Defendant's affirmative statement on the record at the time of the change of plea that he was satisfied with the work and advice of his attorney and that he told his attorney everything about the case and discussed possible defenses was made truthfully, voluntarily and intelligently in response to this Court's questions.

5. The Court finds that Defendant's present contention that he was not in his right mind at the time of change of plea is not credible, based on this Court's both previous and subsequent observation of Defendant's speech, behavior and demeanor that were consistently the same through all the hearings.

## II.

"Hawai'i law regarding plea withdrawals is governed by HRPP Rule 32(d) (2012) and case law construing the rule." State v. Sanney, 141 Hawai'i 14, 24, 404 P.3d 280, 290 (2017). HRPP Rule 32(d) provides:

(d) Withdrawal of plea. A motion to withdraw a plea of guilty or of nolo contendere may be made before sentence is imposed or imposition of sentence is suspended; provided that, to correct manifest injustice the court, upon a party's motion submitted no later than ten (10) days after imposition of sentence, shall set aside the judgment of conviction and permit the defendant to withdraw the plea. At any later time, a defendant seeking to withdraw a plea of guilty or nolo contendere may do so only by petition pursuant to Rule 40 of these rules and the court shall not set aside such a plea unless doing so is necessary to correct manifest injustice.

(Underscoring added.) Urbanski was sentenced on November 25, 2015. His motion to withdraw his guilty plea was filed more than ten days later, on March 14, 2016, by Urbanski's new attorney. The motion should have been filed as a petition under HRPP Rule

40. The motion cited both HRPP Rule 32(d) and Rule 40 (and the Circuit Court stated it would be treated "as a hearing on a Rule 40 motion also"), but it was not served on Urbanski's former defense attorney as is required of a Rule 40 petition. HRPP Rule 40(f) states, in relevant part:

> Where the petition alleges the ineffective assistance of counsel as a ground upon which the requested relief should be granted, the petitioner shall serve written notice of the hearing upon the counsel whose assistance is alleged to have been ineffective and said counsel shall have an opportunity to be heard.

Urbanski's former defense attorney is identified as a witness on the State's memorandum in opposition to Urbanski's motion, but the State did not call the attorney to testify at the hearing. There is no indication in the record that Urbanski's former defense attorney was notified of the proceeding before the Circuit Court.

The Circuit Court denied Urbanski's motion to withdraw guilty plea after concluding "that there is no manifest injustice." It is correct that a defendant moving to withdraw a guilty plea after the imposition of a sentence must show "manifest injustice." Foo v. State, 106 Hawai'i 102, 111, 102 P.3d 346, 355 (2004). The Hawai'i Supreme Court recently explained why the standard for allowing withdrawal of a guilty plea differs depending on whether the motion is made before or after sentencing:

> This difference between the "fair and just" standard (applied to a motion to withdraw a plea made before sentencing) and the "manifest injustice" standard (applied when the motion is made after sentencing) is based on sound policy. When a motion to withdraw a plea has been made prior to sentencing, as opposed to after sentencing, there is no opportunity for the defendant to test the severity of sentence before finally committing himself to a guilty plea. In other words, in a motion to withdraw a plea made prior to sentencing, the defendant cannot obtain a sentence and then move to withdraw the plea if he or she deems that sentence too severe. The effect of allowing a defendant to withdraw his or her plea prior to sentencing for any fair and just reason is to allow the defendant to pursue his or her constitutional right to trial on the original charges.

State v. Guity, 144 Hawai'i 557, 562, 445 P.3d 138, 143 (2019)
(cleaned up).[3] "What the manifest injustice rule seeks to avoid
is an opportunity for the defendant to test the severity of
sentence before finally committing . . . to a guilty plea."
Sanney, 141 Hawai'i at 24-25, 404 P.3d at 290-91.

"Manifest injustice occurs when a defendant makes a
plea involuntarily or without knowledge of the direct
consequences of the plea."[4] Foo, 106 Hawai'i at 111, 102 P.3d at
355 (citation omitted). "[T]here is no manifest injustice when
the trial court has made an affirmative showing by an
on-the-record colloquy between the court and the defendant
wherein the defendant is shown to have a full understanding of
what the plea of guilty connotes and its consequences." Id. at
112, 102 P.3d at 356 (citation omitted). Based on the extensive
on-the-record colloquy between the Circuit Court and Urbanski
during the change of plea hearing, the Circuit Court found that
Urbanski had "changed his plea to 'guilty' voluntarily, knowingly
and intelligently with the full understanding of the plea and
consequences thereof." The Circuit Court found that Urbanski was
not a credible witness to the extent he claimed to the contrary
during the hearing on his motion to withdraw his guilty plea.
Assessing credibility is the province of the Circuit Court.
Fisher v. Fisher, 111 Hawai'i 41, 46, 137 P.3d 355, 360 (2006)
("It is well-settled that an appellate court will not pass upon
issues dependent upon the credibility of witnesses and the weight
of evidence; this is the province of the trier of fact.")
(citation omitted). Had "manifest injustice" been the sole
standard of review applicable to this appeal, we would affirm.
But it is not.

---

[3] The "cleaned up" parenthetical tells readers that extraneous
material (e.g. internal brackets, ellipses, quotation marks, citations, foot-
note reference numbers, and changes in capitalization) was removed from a
quotation for readability, and that none of it mattered for understanding the
quotation or evaluating its weight. See Metzler, Jack, Cleaning Up
Quotations, 18 J. App. Prac. & Process 143 (2017).

[4] The Hawai'i Supreme Court has also found manifest injustice where
the State failed to uphold its end of a plea bargain. State v. Adams, 76
Hawai'i 408, 414, 879 P.2d 513, 519 (1994).

## III.

It is evident from the transcript of the hearing on the motion to withdraw guilty plea that Urbanski was actually claiming to have received ineffective assistance of counsel. Urbanski testified:

> On the day of trial [actually the change of plea hearing], September 21st, seven months ago, I was approximately 20 percent of who I am today. My attorney believed I was an ice addict. Your Honor, I do not do illegal drugs. And I believed that he was an actor pretending to be a lawyer. Everyone else in the courtroom were also actors. You, Your Honor, I did believe you were a real judge, but acting for the day. My answers were automated and very short. Yes, sir. No, sir. I knew I couldn't string a sentence or a thought together and didn't want to look like a fool on Candid Camera. This is an embarrassing truth.
>
> On page 8 of the court transcript, you asked me, Your Honor, your first six-line question -- most of the questions were short -- in that lengthy question, you used the words "intentionally," "building," and "commit a crime." I paused. And then you said, "is that correct?" Your questions, they had a pace, and there was a strong "yes" momentum. In my mind, saying "no" would have been akin to correcting you in your courtroom.
>
> As a retired Honolulu police officer, the courtroom is like my church, the church of truth. And I was -- I was hurting. I was never an attorney who takes a solemn oath to support a side. It was a combination, not understanding quickly enough and not wanting to break Your Honor's cadence.
>
> Anyway, when you asked, "is that correct?" in an attempt to be polite and respectful, as a good police officer, I said, "Yes, sir." I was unaware that at that precise moment, my life had changed, possibly forever.
>
> And finally, right before receiving sentence on November 25th, I was approximately 60 percent of who I am today. My defense attorney told me, with venom in his voice, it is too late to change your plea, we are past that, all you'll do is anger the judge. And then with anger, pain on his face, he barked, so you keep your mouth shut, and I'll get you what you want; you're going to go home today. And as he stormed off, I yelled towards his back, I don't care about the DAG plea, I want to plead innocent. I did what the public -- I did what the public defender told me. And I answered "yes" and "no," and I tried to follow along as best I could.
>
> If the victim -- excuse me -- the complainant had not come to my sentence hearing -- far away from the stress and excitement, high anxiety of the day of the incident, but, once again, he admitted critical case facts and made untrue statements with a clear mind, this time in a court of law in front of a judge. That was unacceptable to me, Your Honor. And truly, that is why I am here today. I am here to ask

the Court's power of discretion in this unique case. If the complainant did not come to my sentencing, I would not be fighting this.

(Underscoring added.) Urbanski also testified:

> Q. Mr. Urbanski, were you on any medication on the day of the change of plea?
>
> A. No, I was not.
>
> Q. Did your prior counsel ever discuss having you evaluated with a three panel at any time during the representation?
>
> A. I requested it many times. I thought it was a good idea. I'm not afraid of psychologists or psychiatrists. But he would not allow me to travel that thought pattern. It would be stomped and redirected.
>
> Q. As you sit here today, do you feel you should have been evaluated by a three panel?
>
> A. Yes, absolutely, 'cause most people in my frame of mind, it wouldn't have been from a doctor-prescribed medication. I was Looney Tunes. And the prison records will show that. The hospital records, the first night, will probably say something to that effect, that, you know, this guy's not fully connected. It took a while for it to wash out of my system. And I'm so grateful that I'm waking up.

(Underscoring added.) Urbanski argued that he was never advised he had a meritorious defense because his original defense attorney "strongly coerced" him to plead guilty as it was "the only honorable thing to do[.]" He claimed that his defense was "the fact that I never entered a building, I was in a backyard, that really should matter." This is directly contrary to his former defense counsel's statement during the sentencing hearing that "He went to the Kinoshitas' house and he entered their storage shed, took the bottle of water and was drinking it." (Underscoring added.)

When reviewing a claim of ineffective assistance of counsel, an appellate court looks at whether defense counsel's assistance was within the range of competence demanded of attorneys in criminal cases. State v. DeLeon, 131 Hawai'i 463, 478, 319 P.3d 382, 397 (2014). The defendant has the burden of establishing ineffective assistance of counsel and must meet the following two-part test: (1) that there were specific errors or omissions reflecting counsel's lack of skill, judgment, or

diligence; and (2) that such errors or omissions resulted in either the withdrawal or substantial impairment of a potentially meritorious defense.  Id. at 478-49, 319 P.3d at 397-98.  A successful claim for ineffective assistance of counsel can establish "manifest injustice."  See State v. Song, No. CAAP-14-0001116, 2016 WL 483595 (Haw. App. Feb. 5, 2016) (SDO) (analyzing, on post-sentencing motion to withdraw no contest plea, whether defendant's court-appointed attorney provided ineffective assistance of counsel).

As previously stated, HRPP Rule 40(f) requires that written notice of the petition seeking relief based on ineffective assistance of counsel be served "upon the counsel whose assistance is alleged to have been ineffective and said counsel shall have an opportunity to be heard."  Because Urbanski's motion to withdraw guilty plea was never served upon Urbanski's former defense attorney, we vacate the Circuit Court's Order denying the motion and remand for further proceedings under HRPP Rule 40.

DATED: Honolulu, Hawai'i, September 17, 2019.

On the briefs:

Shawn A. Luiz,
for Defendant-Appellant.

Loren J. Thomas,
Deputy Prosecuting Attorney,
City and County of Honolulu,
for Plaintiff-Appellee.

Presiding Judge

Associate Judge

Associate Judge